HUDSON v HUDSON

Docket No. 322257. Submitted October 6, 2015, at Lansing. Decided
January 7, 2016, at 9:05 a.m.

Plaintiff and defendant were parties in an action for divorce in the
Calhoun Circuit Court. Plaintiff and defendant were married in
1999, and they divorced in 2013. Plaintiff worked as a school
teacher; her pension was with the Michigan Public School Em-
ployees' Retirement System (MPSERS). Defendant worked at a
federal cemetery; his pension was with the Federal Employees
Retirement System (FERS). Following entry of the judgment of
divorce, defendant submitted to plaintiff an Eligible Domestic
Relations Order (EDRO) that required defendant to choose one of
three options in Paragraph 7 to establish the terms and condi-
tions that would apply to the single life annuity he would receive
from plaintiff's pension. He chose option (b) in Paragraph 7,
which provided for the continuation of benefits during his lifetime
even after plaintiff's death if payment of benefits had begun
before her death. Plaintiff objected to allowing defendant to
choose option (b) because she did not have a similar choice
concerning her receipt of pension benefits from defendant's pen-
sion. According to defendant, he was permitted to choose any
option from the EDRO unless the judgment of divorce specifically
precluded it, which it did not. The court, Stephen B. Miller, J.,
agreed with defendant and signed the EDRO. The court later
denied plaintiff's motion for reconsideration. Plaintiff appealed.

The Court of Appeals *held*:

The trial court properly enforced the parties' judgment of
divorce and the provisions it made for distribution of the parties'
pensions, even though the court mistakenly relied on MCL
552.101(5) to support its ruling. MCL 552.101(5) was irrelevant to
defendant's decision to select option (b) in Paragraph 7 of the
EDRO. The parties' property division agreement was incorpo-
rated into the judgment of divorce, and it expressly stated that
each party was entitled to the assignment of a specific percentage
of the other party's pension. Plaintiff argued that the EDRO
unfairly granted defendant rights to plaintiff's pension that were
not available to plaintiff with respect to defendant's pension. In

fact, the federal regulation governing defendant's pension, 5 CFR 838.302(b), clearly states that any court order indicating that a party may continue to collect benefits from his or her former spouse's pension even after the former spouse's death is not a court order acceptable for processing. Notably, both parties and their counsel had access to information before the judgment of divorce entered from which they could have readily discovered the disparity between the choices available to defendant and the choices available to plaintiff.

Affirmed.

*Law Weathers* (by *Stephanie S. Fekkes* and *James H. Fisher*) for plaintiff.

Blake Alan Hudson *in propria persona.*

Before: BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ.

BOONSTRA, P.J. Plaintiff appeals by leave granted[1] the trial court's entry of an Eligible Domestic Relations Order (EDRO) directing the administrator of plaintiff's pension plan, the Michigan Public School Employees' Retirement System (MPSERS), to grant defendant an interest in plaintiff's pension benefits in the form of a single life annuity payable over defendant's lifetime and the trial court's denial of plaintiff's motion for reconsideration of that order. We affirm.

I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant were married in November 1999. Before and during the marriage, plaintiff worked as a school teacher, and defendant worked at a federal cemetery. Plaintiff filed for divorce on April 17, 2013, and she and defendant were ordered to mediation in November 2013 to address the division of property. The

---

[1] *Hudson v Hudson*, unpublished order of the Court of Appeals, entered November 19, 2014 (Docket No. 322257).

parties reached an agreement regarding the division of property, and that agreement was incorporated in the judgment of divorce. Relevant to this appeal, the judgment stated the following regarding the division of the parties' respective pensions:

> **IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff, JEANINE PAULA HUDSON, shall receive as her sole and separate property, free and clear of any claim thereto, or interest therein by Defendant, BLAKE ALAN HUDSON, fifty (50%) percent of the Defendant's F.E.R.S.[2] benefits as of April 23, 2013, pursuant to a Qualifying Court Order.
>
> * * *
>
> IT IS FURTHER ORDERED AND ADJUDGED that Defendant, BLAKE ALAN HUDSON, shall receive as his sole and separate property, free and clear of any claim thereto, or interest therein by Plaintiff, JEANINE PAULA HUDSON, fifty (50%) percent of 79% (*i.e.* 39.50%) of Plaintiff's M.S.E.R.S. [sic] benefits as of April 23, 2013, adjusted for gains and losses thereafter until the date of distribution, pursuant to an Eligible Domestic Relations Order.[3]

Defendant sent to plaintiff a proposed EDRO to be filed with the MPSERS. The document is a standardized form that allows the preparer to select certain options. Paragraph 6 of the EDRO states that "[t]he Participant assigns to the Alternate Payee a portion of the Participant's benefits from the Plan and the Plan will pay benefits to the Alternate Payee according to the following terms and conditions." Following this

---

[2] Federal Employees Retirement System.

[3] The record reflects that the parties agreed to different percentages because plaintiff's pension began accruing before the marriage (and therefore, a portion was not marital property), while defendant's pension accrued entirely during the marriage.

heading, defendant filled in a table showing that he, as the alternate payee, would receive 39.5% of plaintiff's allowance, with the years of service included in the calculation identified as March 1, 1997, until April 23, 2013. Neither party disputes that this accurately represents the benefit granted to defendant in the judgment of divorce.

The crux of the dispute between the parties is Paragraph 7 of the EDRO, which introduces three options for the terms and conditions of payment. The parties agree that option (c), a Joint Survivor Option, is not relevant. At issue are options (a) and (b), which state:

(a) Single Life Annuity – Payable Over Participant's Lifetime

The benefits payable to the Alternate Payee will begin when the Participant begins to receive benefits under the Plan and will be in the form of a single life annuity payable during the lifetime of the Participant. If the Participant elects to receive an early-reduced retirement benefit, the Alternate Payee's benefit shall be reduced by the same factor.

Death of Participant: If the Participant predeceases the Alternate Payee after payments to the Alternate Payee begin, all benefits payable to the Alternate Payee will permanently cease.

Death of Alternate Payee: If the Alternate Payee predeceases the Participant after payments to the Alternate Payee begin, all benefits payable to the Alternate Payee under this EDRO will revert to the Participant.

(b) Single Life Annuity – Payable Over Alternate Payee's Lifetime

The benefits payable to the Alternate Payee will begin when the Participant begins to receive benefits under the

Plan and will be in the form of a single life annuity payable during the lifetime of the Alternate Payee. (Note: An actuarial adjustment to the Alternate Payee's benefit will be made to reflect the difference in life expectancies.)

Death of Participant: If the Participant predeceases the Alternate Payee once the Alternate Payee has begun receiving payments, benefits will continue for the Alternate Payee's lifetime.

Death of Alternate Payee: Once payment of the Alternate Payee's benefit begins, the Participant's benefit is permanently reduced and the Alternate Payee's benefit will not revert to the Participant if the Alternate Payee predeceases the Participant.

Defendant selected option (b). Plaintiff filed an objection with the trial court, arguing that defendant's selection violated the judgment of divorce. Plaintiff argued that defendant's proposed EDRO unfairly granted defendant rights in plaintiff's pension that were not available to plaintiff with regard to defendant's pension. She asserted that because 5 CFR 838.302(b) does not allow her to obtain benefits from defendant's federal pension in the form of an annuity payable during her lifetime, defendant's proposed EDRO results in a distribution of the parties' pension plans that is contrary to the judgment of divorce, and that defendant therefore should have selected option (a). 5 CFR 838.302(b) provides that

[a]ny court order directed at employee annuity that expressly provides that the former spouse's portion of the employee annuity may continue after the death of the employee or retiree, such as a court order providing that the former spouse's portion of the employee annuity will continue for the lifetime of the former spouse, is not a court order acceptable for processing.

Thus, plaintiff was prohibited by federal regulation from selecting an option comparable to option (b), i.e., an option that provided for payments from defendant's pension after his death. That federal regulation did not, however, apply to defendant with regard to plaintiff's pension. Defendant responded that, according to MCL 552.101(5), he was allowed to select any option unless the option was specifically precluded by the judgment of divorce. Defendant asserted that nothing could be done about the fact that his federal plan did not allow plaintiff a comparable option, but stated that it did not preclude him from selecting option (b) in Paragraph 7.

The trial court signed defendant's proposed EDRO and later denied plaintiff's motion for reconsideration, reasoning in part that MCL 552.101(5) required that exclusions be spelled out in the judgment of divorce, and that was not done in this case.

This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision interpreting a divorce judgment and a qualifying domestic relations order (QDRO) is reviewed de novo, *Neville v Neville*, 295 Mich App 460, 466; 812 NW2d 816 (2012), as are questions of statutory interpretation, *AFSCME v Detroit*, 468 Mich 388, 398; 662 NW2d 695 (2003).

## III. ANALYSIS

We conclude that the trial court erred by determining that MCL 552.101(5) required that defendant be allowed to select option (b) in Paragraph 7 of the EDRO. However, the trial court's ultimate conclusion that it was bound by court rule to enforce the terms of

the judgment of divorce, and that the EDRO complied with the judgment, was correct. We therefore affirm.

MCL 552.101(5) states as follows:

> For any divorce or separate maintenance action filed on or after September 1, 2006, if a judgment of divorce or judgment of separate maintenance provides for the assignment of any rights in and to any pension, annuity, or retirement benefits, a proportionate share of all components of the pension, annuity, or retirement benefits shall be included in the assignment unless the judgment of divorce or judgment of separate maintenance expressly excludes 1 or more components. Components include, but are not limited to, supplements, subsidies, early retirement benefits, postretirement benefit increases, surviving spouse benefits, and death benefits. This subsection shall apply regardless of the characterization of the pension, annuity, or retirement benefit as regular retirement, early retirement, disability retirement, death benefit, or any other characterization or classification, unless the judgment of divorce or judgment of separate maintenance expressly excludes a particular characterization or classification.

The "[f]irst and foremost" rule of statutory construction is to "give effect to the Legislature's intent." *Tryc v Mich Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). Statutory construction requires that we examine the language of the statute. *AFSCME*, 468 Mich at 399. " 'If the statute's language is clear and unambiguous, [this Court] assume[s] that the Legislature intended its plain meaning . . . .' " *Id.*, quoting *Omelenchuk v City of Warren*, 466 Mich 524, 528; 647 NW2d 493 (2002) (quotation marks and citation omitted). This Court should give meaning to every word and "avoid a construction that would render any part of the statute surplusage or nugatory." *Id.* The statutory definition of a word, if given, controls the meaning of the word. *Tryc*, 451 Mich at 136. Further, "[w]hen a

statute uses a general term followed by specific examples included within the general term, . . . the canon of statutory construction *ejusdem generis* applies." *Huggett v Dep't of Natural Resources*, 464 Mich 711, 718; 629 NW2d 915 (2001) (italics added). Under that rule of statutory construction, "the general term is restricted to include only things of the same kind, class, character, or nature as those specifically enumerated." *Id.* at 718-719.

Parsed down to the language relevant to this case, MCL 552.101(5) states that if the judgment of divorce "provides for the assignment of any rights in and to any pension, . . . a proportionate share of all components of the pension . . . shall be included in the assignment unless the judgment of divorce . . . expressly excludes 1 or more components." In this case, the judgment of divorce clearly provided for the assignment of rights in plaintiff's pension. Therefore, defendant is also assigned "a proportionate share of all components of [plaintiff's] pension," MCL 552.101(5), unless a component has been specifically excluded. The judgment of divorce in this case contained no exclusionary language in the paragraph granting defendant an interest in plaintiff's pension. Rather, in affirmative language, it granted defendant a 39.5% benefit in plaintiff's pension as of April 23, 2013, "free and clear of any claim . . . by [p]laintiff." The dispositive question then became whether the right to select one of the three options in Paragraph 7 was a "component[] of the pension" included in the assignment to defendant.

MCL 552.101(5) states that "[c]omponents include, but are not limited to, supplements, subsidies, early retirement benefits, postretirement benefit increases, surviving spouse benefits, and death benefits." All of

the specific examples listed in the statute are separate benefits typically associated with pension plans, i.e., early retirement, surviving spouse, and death. By contrast, Paragraph 7 concerns the terms and conditions of all benefits to be paid; Paragraph 7 does not contain a distinct benefit conferred by plaintiff's plan, such as an early retirement benefit or a death benefit.[4] Therefore, the option in Paragraph 7 to choose the terms and conditions of payment is not a "component" as that term is defined in MCL 552.101(5). See *Huggett*, 464 Mich at 718-719.

Further, MCL 552.101(5) does not simply state that all components are included. It states that "a proportionate share of all components" is included. The choice under Paragraph 7 is not something that can be divided proportionally. That is, defendant cannot be given 39.5% of the choice to which he is entitled. If the choice of options under Paragraph 7 constitutes a "component," then the words "a proportionate share of" become surplusage and nugatory. See *AFSCME*, 468 Mich at 399.

In sum, MCL 552.101(5) has no applicability to the question whether defendant has the right to elect, under Paragraph 7 of the EDRO, the terms and conditions of the benefits he will receive. The trial court thus erred to the extent that it based its holding on its interpretation of MCL 552.101(5).

---

[4] For example, although defendant argued that MCL 552.101(5) granted him the option of choosing either option (a) or (b) in Paragraph 7 of the EDRO—his choice allowed him to receive a "surviving spouse benefit"—the EDRO separately indicates, in Paragraph 11, that defendant may be designated as a surviving spouse for the purposes of receiving certain surviving spouse benefits. Both option (a) and option (b) in Paragraph 7 are designated as "Single Life Annuities."

However, in denying plaintiff's motion for reconsideration, the trial court also stated that its holding was based on a court rule:

> [T]he first [matter of law contributing to the court's ruling] involves the court rule. There was a signed judgment in this case by Ms. Fekkes and her client [plaintiff] as I recall, and so we have an agreed upon judgment that was pursuant to a settlement placed on the record back on December 10th, 2013, and the judgment provided basically for the parties to divide their pensions fifty-fifty. . . . So we have a court rule in regard to what binds parties and attorneys or their signature on a signed document or what they put on the record in the courtroom. . . . The Court is simply bound by the court rule. Then it says the parties bound themselves to the judgment and then you look at the statute and the statute says what it says which involves what would be in the presumably in the judgment, and the parties just did not make those further provisions I guess if you want to put it that way. That could have been put into the judgment. They weren't.

The trial court did not explicitly identify the particular court rule on which it based its decision. However, MCR 3.211(B)(2) states in pertinent part:

> A judgment of divorce, separate maintenance, or annulment must include . . . a determination of the rights of the parties in pension, annuity, and retirement benefits, as required by MCL 552.101(4).

MCL 552.101(4) states as follows:

> Each judgment of divorce or judgment of separate maintenance shall determine all rights, including any contingent rights, of the husband and wife in and to all of the following:
>
> (a) Any vested pension, annuity, or retirement benefits.
>
> (b) Any accumulated contributions in any pension, annuity, or retirement system.

(c) In accordance with . . . MCL 552.18, any unvested
pension, annuity, or retirement benefits.

The trial court stated that the parties were bound by
the language of the judgment of divorce, and that the
judgment of divorce did not preclude defendant's elec-
tion. We agree.

The judgment of divorce should be interpreted as a
court would interpret a contract, see *Laffin v Laffin*,
280 Mich App 513, 517; 760 NW2d 738 (2008), i.e., the
intent of the parties should be determined from the
plain and ordinary meaning of the language used.
*Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App
589, 611; 792 NW2d 344 (2010).

In this case, the agreed-on terms of the judgment of
divorce, as they concerned defendant's interest in
plaintiff's MPSERS pension, clearly stated that defen-
dant was entitled to 39.5% of the benefits plaintiff had
accrued as of April 23, 2013, and that those benefits
were to be adjusted for gains and losses until the date
of distribution. The divorce judgment also explicitly
stated that defendant received this benefit "as his sole
and separate property, free and clear of any claim
thereto, or interest therein by Plaintiff . . . ." The only
other provision of the divorce judgment that would
have any bearing on this dispute was the provision
granting plaintiff 50% of defendant's benefits as of
April 23, 2013. Plaintiff was to receive those benefits
"as her sole and separate property, free and clear of any
claim thereto, or interest therein by Defendant . . . ."

The question thus becomes whether defendant's
option of choosing the terms and conditions of pay-
ment, combined with plaintiff's inability to select an
option similar to the one chosen by defendant, renders
the resulting division contrary to the parties' stated
intent in the judgment of divorce. We hold that it does

not. The parties expressly agreed to, and the resulting judgment of divorce expressly provided for, specific mathematical divisions of the parties' interests in their respective pension plans. The parties had an opportunity, before the judgment of divorce entered, to fully explore available payment options under the parties' respective pension plans. In addition, the parties could have considered and addressed the impact, if any, of the available options and the apparently asymmetrical nature of the options available under the MPSERS plan and the FERS plan. Finally, the parties had an opportunity in the settlement agreement and in the judgment of divorce to make provision for handling the options in Paragraph 7. For example, the standard EDRO form applicable to plaintiff's MPSERS pension specifically set forth the payment options at issue in this case, and it was available to the parties and their legal counsel before entry of the judgment of divorce. Similarly, the impact of 5 CFR 838.302(b) on the availability of similar options under defendant's FERS plan was readily determinable by the parties and their legal counsel before entry of the judgment of divorce.

It was thus incumbent on the parties and their counsel to determine and to include within the judgment of divorce the rights of each party relative to the other party's pension plan, including any restrictions on a party's selection of an option for receiving payment. The fact that the parties may have neglected to, or may have chosen not to, address this issue in the judgment of divorce does not then permit a party to subsequently question whether selection of an option afforded by the EDRO is contrary to the terms of the judgment of divorce. It is not. Nor does the parties' failure to address the issue support an equitable finding that the issue is somehow resolved by "an implied term of th[e] settlement agreement" (and therefore of

the resulting judgment of divorce). See *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005) ("[T]he judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties because fundamental principles of contract law preclude such subjective post hoc judicial determinations of 'reasonableness' as a basis upon which courts may refuse to enforce unambiguous contractual provisions."). The parties are bound by the terms of the agreed-on judgment of divorce. See MCR 2.507(G); see also *Lentz v Lentz*, 271 Mich App 465, 472; 721 NW2d 861 (2006) ("Absent fraud, coercion, or duress, the adults in the marriage have the right and the freedom to decide what is a fair and appropriate division of the marital assets, and our courts should not rewrite such agreements.").

Affirmed.

SAAD and HOEKSTRA, JJ., concurred with BOONSTRA, P.J.